## S09F1718. NEWMAN v. PATTON.
### (692 SE2d 322)

BENHAM, Justice.

Appellant Kenna Newman appeals from a final decree of divorce.[1] Appellant and appellee Sean Patton were married September 1, 2002, and became officially separated on August 1, 2007. The parties' primary dispute concerns the division of stock options awarded to appellant from one of her employers. Appellant had a total of 140,750 stock options issued to her from her employer Crown Castle for whom she worked from May 1999 to April 2006. Although the stock options were all awarded to her prior to the marriage, a portion vested before the marriage and a portion vested during the marriage. When she left her employment with Crown Castle in April 2006, appellant risked losing all of her accumulated options unless she exercised them within two years of leaving the company. Accordingly, she exercised her Crown Castle options in 2006 and 2007, using them to create a Charles Schwab investment portfolio.

The trial court held a final hearing on September 9, 2008, and issued the final divorce decree on February 16, 2009. Determining there was no Georgia case law on point and relying on cases from

---

[1] We granted Newman's application for discretionary appeal under the Court's Pilot Project for divorce cases.

Virginia,[2] the trial court held the 56,993 options which vested before the marriage were not marital property and the 83,757 options which vested during the marriage were akin to deferred compensation and thus constituted marital property to which appellee was entitled to his equitable share of 40.5%. The final decree of divorce also determined appellee was entitled to 40% of an IRA account which appellant opened prior to the marriage and to which she made only a contribution of $500 during the marriage. In addition, the trial court held that appellee was entitled to $200 of a deferred compensation plan account appellant opened prior to the marriage and to which she made no contribution during the marriage.

1. Appellant contends the trial court erred when it determined that the Crown Castle stock options which vested during the marriage were marital property subject to equitable division. While we express no opinion as to the ultimate outcome in this case, we agree the trial court erred when it relied on Virginia cases interpreting a Virginia statute (Va. Code Ann. § 20-107.3) to determine that the stock options were marital property because the options were akin to deferred compensation and because they vested during the marriage. Georgia law does not have a similar statutory scheme or support such a bright-line rule as announced by the trial court. In this state, property is subject to equitable division if it is " 'acquired as a direct result of the labor and investments of the parties during the marriage. . . .' " *Payson v. Payson*, 274 Ga. 231 (1) (552 SE2d 839) (2001). See also *Dasher v. Dasher*, 283 Ga. 436 (1) (658 SE2d 571) (2008). In *Payson*, this Court used this overarching principle to hold that the property interest in stocks brought to the marriage by the wife and stocks the wife received by using pre-marital assets to purchase stock options which had vested prior to the marriage were not marital property subject to equitable division because they were neither generated by the marriage nor accumulated during the marriage. *Payson*, supra, 274 Ga. at 232 (1) (a).[3]

As to the stock options that were awarded prior to the marriage and vested during the marriage, the trial court's analysis was inaccurate and incomplete. Based on the overarching principle announced in *Payson*, the trial court was required to look at the evidence and determine whether the vesting of the previously

---

[2] *Ranney v. Ranney*, 45 Va. App. 17 (608 SE2d 485) (2005); *Dietz v. Dietz*, 17 Va. App. 203 (436 SE2d 463) (1993).

[3] Thus, in this case, the trial court appropriately found that the pre-marital stock options which vested prior to the marriage were appellant's separate property and not subject to equitable division. Appellee does not contest that the stock options that were awarded prior to the marriage, vested before the marriage, and exercised during the marriage are appellant's separate property.

awarded stock options was the direct result of the parties' labors and investments during the marriage. If the previously awarded stock options vested because of efforts made by either party during the course of the marriage, then they are marital assets; otherwise, they are appellant's separate property. Key to the trial court's underlying factual inquiry and any decision it may make as to equitable distribution, if any, is consideration of a multitude of factors including, but not limited to: whether the marital or premarital funds were used to exercise the options; the employer's purpose for granting the option (i.e., for past, present or future service);[4] the best formula for apportioning the marital share of the options based on the purpose and timing of the options in relation to the time of the marriage;[5] a method of distribution to appellee; and the parties' tax obligations resulting from distribution. See *Payson*, supra, 274 Ga. at 231 (wife used premarital funds to exercise stock options); Tracy Thomas, *The New Marital Property of Employee Stock Options*, 35 Family Law Quarterly 497, 510-525 (2001). The fact that the previously awarded stock options vested during the marriage is not determinative in and of itself of whether the options constitute a marital asset. *Dasher*, supra, 283 Ga. at 436 ("Property does not become a marital asset simply because one of the spouses obtains it during the course of the marriage.").

In addition, *Payson*, supra, calls for the trial court to inquire as to whether any appreciation of value of a non-marital asset results from the joint efforts of the parties during the marriage or is the result of market forces. 274 Ga. at 232-233 (1) (b).

> [A]ny appreciation in the value of the separate property during the marriage may or may not be separate property, depending on the circumstances giving rise to the appreciation. If the factfinder determines the appreciation is due

---

[4] This requires a review of all contracts or other documentation outlining the terms of the employer's stock option program(s).

[5] After a court has made a qualitative decision on the reason why the [stock option] was granted (that is, for past, present, or future service), then the court must take that information and plug it into a quantitative formula to compute the precise share or ratio of the option that will be designated marital or community property. This formula – the coverture factor or time rule formula – is simply a calculation to determine the portion of an entire option property that covers the period of the marriage. Time rule formulas are used for options, as in pension cases, when a property is acquired in exchange for an employee's service that includes service both during and before or after the marriage. Thus, the court must compute the period during which an employee's service covers the marital period and segregate the separately acquired interest.
Tracy Thomas, *The New Marital Property of Employee Stock Options*, 35 Family Law Quarterly 497, 514 (2001).

solely as the result of market forces, the appreciation is the owner's separate property; to the extent the factfinder determines the appreciation is the result of the efforts of either or both spouses, that appreciation is a marital asset.

*Crowder v. Crowder*, 281 Ga. 656, 658 (642 SE2d 97) (2007). See also *Wright v. Wright*, 277 Ga. 133 (1) (587 SE2d 600) (2003) (because the husband brought the house to the marriage, only the subsequent increase in the net equity was a marital asset). Therefore, in regard to the stock options which vested prior to the marriage, the trial court was required to determine whether they appreciated in value during the marriage and whether that appreciation was the result of the parties' efforts or the result of market forces. Since the trial court did not engage in the full analysis required in this case, its judgment is reversed and the matter is remanded so that the trial court can issue a final divorce decree consistent with this opinion.

2. The trial court also erred when it held that a portion of the deferred compensation plan account was marital property to which appellee was entitled to $200. The evidence shows that the deferred compensation plan account was created prior to the marriage and no contributions were made to it during the marriage. Accordingly, it is appellant's separate property. See *Payson*, supra, 274 Ga. at 232 ("A property interest brought to the marriage by one of the marriage partners is a non-marital asset and is not subject to equitable division since it was in no sense generated by the marriage."). Appellee would only be entitled to any appreciation in value of the deferred compensation account that was the direct result of the labors of the parties during the marriage. There was evidence and the trial court found in its statement of facts that appellant had an IRA account created prior to the marriage to which she contributed $500 during the marriage. Therefore, appellee is, as appellant concedes, entitled to a portion of the $500 marital contribution to the IRA account and any appreciation in value thereto that is a direct result of the parties' labors during the marriage.

*Judgment reversed and case remanded with direction. All the Justices concur.*

DECIDED MARCH 22, 2010.

*Delong, Caldwell & Bridgers, Earnest H. Delong, Jr.,* for appellant.

*Davis, Matthews & Quigley, Richard W. Schiffman, Jr., Rebecca L. Crumrine,* for appellee.