297 Ga. 483
FINAL COPY

S15A0244. STEIS v. STEIS.

NAHMIAS, Justice.

Ronald G. Steis, M.D. (Husband) and Jane Leslie Steis (Wife) married in 2000 and are currently going through a divorce. Husband filed a motion for partial summary judgment seeking a ruling that certain property acquired during the marriage is his separate property under the terms of the parties' prenuptial agreement, and thus is not subject to equitable division. Specifically, Husband claimed as his separate property his salary from employment as an oncologist earned during the marriage and the parties' jointly titled bank accounts, investment accounts, and real property, all of which he asserts were acquired with his salary. The trial court denied Husband's motion, and we granted his application for an interlocutory appeal. We now affirm.

1.   Prior to the marriage, both parties worked for Atlanta Cancer Center, P.C. (ACC), Husband as an oncologist and Wife in an administrative capacity. Husband also owned a 9% interest in ACC.[1] On September 14, 2000,

---

[1] Husband sold his interest in ACC for more than $800,000 shortly after Wife filed for divorce, placing the proceeds in an account in his individual name. Wife does not dispute that Husband's 9% interest in ACC was his separate property and that the proceeds from the sale are his separate property.

two days before their wedding, the parties signed a lengthy prenuptial agreement, which the parties agree is valid and enforceable.

The agreement recited that both parties had been married before and already had children; acknowledged a disparity in their relative wealth; and said that they desired to retain all their current and future separate property free from any claim by the other spouse resulting from their upcoming marriage and any subsequent divorce. Paragraph 4 (a) (1) of the agreement said, "All Separate Property of each party shall remain the sole and exclusive property of such party and will not be subject to division or distribution upon divorce, legal separation or annulment." Paragraph 3 (b), entitled "Definition of Separate Property," said that for purposes of the prenuptial agreement, "Separate Property" shall mean as to each party:

(i)     all property owned by such party prior to the marriage, however acquired, and brought into the marriage, and any property received by either party at any time by inheritance, beque[st], or gift;

(ii)    all property which represents the proceeds (direct or indirect) of any sale, exchange, disposition, transfer, reinvestment or other transmutation of any property described in [this subparagraph];

(iii)   all dividends, interest, rents, royalties, earnings, or other income of any kind from any property described in [this subparagraph]; and

2

(iv)  all enhancement and appreciation in the value of any property described in [this subparagraph], including capital gains, regardless of how or when such appreciation accrues or is realized, but specifically excluding contributions to said property made during the marriage from sources other than [Husband's] or [Wife's] Separate Property.

The agreement also recited that Husband and Wife had disclosed to each other "the nature and extent of their various property interests and debts and their respective sources of income, and each has attached hereto a true and correct copy of his or her current, accurate financial statement."  Husband's "Financial Statement," which was attached to the agreement as Exhibit A, listed a house, two vehicles, several bank and retirement accounts, and "investments," with a total value of $860,479; an "[a]pproximate current yearly income" of $550,000; and a "[m]edical practice" of unspecified value.[2]  Wife's "Financial Statement," which was attached as Exhibit B, listed a $125,000 townhouse and other assets with a total value of approximately $55,000.  In Paragraph 2 (a), the agreement explained:

[Wife] acknowledges that the major assets owned by [Husband] or in which [Husband] has a contingent interest, the significant

_____

[2] The following disclaimer appeared underneath the words "[m]edical practice": "If this has any value, it is of uncertain value, and [Wife] expressly waives any claims she could assert because of any inaccuracy or uncertainty in this statement of value of [Husband's] medical practice."

3

liabilities owed by [him], and the primary sources of [his] income on the date of execution of this Agreement have been fully disclosed to her (as reflected on [his] financial statement, dated as of September 2000, attached hereto as Exhibit "A" and hereby made a part hereof). [Wife] further acknowledges that such assets constitute [Husband's] present Separate Property as hereinafter defined, that she has given thought and consideration to the impact on her of releasing any rights she might hereafter acquire in [his] present or future Separate Property as a result of their marriage, and that she is entering into this Agreement freely and with a full understanding of its provisions. [Wife] further acknowledges she has seen [Husband's] tax return for 1999, bank statements and all other documents she has requested.

After the wedding, Wife left her employment with ACC and worked both in and out of the home, assisting with Husband's medical practice and the management of their assets. The bulk of the parties' income during the marriage consisted of Husband's salary from ACC, which was reflected in his W-2 forms as wages or salary. Husband's salary increased substantially during the marriage and far exceeded the parties' living expenses. The excess sums were deposited into more than a dozen checking, retirement, and brokerage accounts, used to purchase certificates of deposit and annuities, and invested in real estate and vehicles. Most of these assets were jointly titled, and their total value exceeds $5 million.

On October 24, 2012, Wife filed a petition for divorce. Husband filed an

4

answer and counterclaim. Wife later filed a motion to enforce the prenuptial agreement, and Husband responded that he had no objection to that. Following discovery, Husband filed a motion for partial summary judgment on January 21, 2014. Husband claimed that all property created during the marriage was derived from two sources — the assets listed in Exhibit A to the prenuptial agreement and his salary from his medical practice — all of which, he asserted, the agreement classified as his "Separate Property" not subject to equitable division in the event of divorce.

On June 26, 2014, the trial court denied Husband's motion. The court ruled that, upon consideration of the prenuptial agreement as a whole, Husband's personal income from the medical practice, as opposed to any passive income from his 9% ownership interest in the practice, was not his Separate Property but instead was marital property. The court added that even under Husband's interpretation of the agreement, there would be genuine issues of material fact as to how much of his salary was his Separate Property. The court ruled that the jointly titled assets purchased with Husband's salary, which the court had said was marital property, were also marital property. The court also held that even if Husband's salary were not marital property, there would

5

be genuine issues of material fact as to whether some or all of the jointly titled assets were intended as gifts to the marital unit. The court issued Husband a certificate of immediate review, we granted his application for an interlocutory appeal, and he filed a timely notice of appeal.

2. Husband contends that the trial court erred in holding that his personal income from ACC, as opposed to the passive income from his 9% ownership interest in the medical practice, was not his Separate Property under the prenuptial agreement, because the agreement identifies his annual salary as his Separate Property by listing it in Exhibit A and because Paragraph 3 (b)'s definition of "Separate Property" includes "all dividends, interest, rents, royalties, earnings, or other income of any kind from any property described in" that subparagraph, including Husband's interest in ACC. We disagree.

When the prenuptial agreement is read as a whole, and in the legal context of prenuptial agreements, it becomes clear that Exhibit A is not an exhaustive list of Husband's Separate Property developed in relation to Paragraph 3 (b) (i) of the agreement, which defines each party's "Separate Property" to include "all property owned by such party prior to the marriage." The agreement first refers to Exhibit A in the recitals, in connection with the parties' disclosure to each

6

other of "the nature and extent of their respective [1] property interests and [2] debts and their respective [3] sources of income." Paragraph 2 (a) then says that Exhibit A reflects [1] the "major assets" owned by Husband or in which he has an interest, [2] his "significant liabilities," and [3] "the primary sources of [his] income on the date of execution" of the prenuptial agreement. Thus, like the recital, Exhibit A is not limited to "property owned by [Husband] prior to the marriage" — i.e., his assets — because it may include two other categories of financial information – his debts and his income sources. Indeed, Exhibit A does not purport to list all of Husband's premarital assets, only the "major" ones (and only his "significant" liabilities and "primary" sources of income).

Husband focuses on the sentence in Paragraph 2 (a) which says that Wife "acknowledges that such assets constitute [Husband's] present Separate Property." That sentence makes clear that those assets — the "major assets" referred to in the preceding sentence and reflected in Exhibit A — are Husband's Separate Property. But his "income" — a word used separately from the word "assets" in the preceding sentence — is plainly something different than his assets. Likewise, in ordinary English, Husband's "sources of income" would not be congruent with the "property" owned by Husband prior

7

to the marriage, as Separate Property is defined in Paragraph 3 (b) (i). To the extent that income exceeds expenses, it may be used to purchase assets, or the money earned may be retained as a liquid asset, but income itself is not in normal parlance an asset or property.

Moreover, Exhibit A is not entitled "Separate Property," but rather "Financial Statement." And in its legal context as a part of a prenuptial agreement, Exhibit A and the paragraphs of the agreement that reference it appear to be intended to provide the financial disclosure, not only of significant assets but also of liabilities and income, that is required to ensure that such an agreement will be enforceable. Georgia law "imposes an affirmative duty of full and fair disclosure of all material facts on parties entering into an antenuptial agreement," Blige v. Blige, 283 Ga. 65, 70 (656 SE2d 822) (2008), and a spouse's failure to disclose his income prior to execution of such an agreement may make the agreement unenforceable in the event of a divorce. See, e.g., Corbett v. Corbett, 280 Ga. 369, 370 (628 SE2d 585) (2006) (upholding a trial court's refusal to enforce an antenuptial agreement based on a finding that a spouse "failed to disclose his income," which was "material to the antenuptial agreement"). "[A]ttaching to the antenuptial agreement *financial statements*

8

showing both parties' assets, liabilities, and income, while not necessary, 'is the most effective method of satisfying the [disclosure] obligation in most circumstances . . . .'" Lawrence v. Lawrence, 286 Ga. 309, 313 (687 SE2d 421) (2009) (citation omitted; emphasis added).

Thus, the trial court properly rejected Husband's argument that the listing in Exhibit A of his "[a]pproximate current yearly income" of $550,000 made all salary that Husband earned during the subsequent marriage his Separate Property under the parties' prenuptial agreement. That item was simply a disclosure of his approximate annual income at the time the agreement was entered.[3]

Husband also claims that his salary from ACC qualifies as Separate Property under Paragraph 3 (b) (iii) of the agreement, which says that "income of any kind from any [Separate Property]" is itself Separate Property. Wife does not dispute that Husband's 9% interest in ACC, which he owned prior to the marriage, was his Separate Property under Paragraph 3 (b) (i). However, Husband's W-2 salary from ACC as an *employee* of the corporation, like Wife's

---

[3] To the extent that the trial court referred to the listing of Husband's income as an "asset," that ruling was erroneous.

salary from ACC prior to the marriage, was an expense of the business, and thus not income to its *owners*, including Husband in his capacity as a shareholder. Moreover, even if Husband's salary did constitute "other income" derived from his ownership interest in ACC within the meaning of Paragraph 3 (b) (iii), nothing in the record shows that his salary was paid exclusively from his 9% ownership interest. Accordingly, the trial court correctly denied partial summary judgment on Husband's claim that his salary earned during the marriage was his Separate Property.

3. Husband also contends that the trial court erred in denying him partial summary judgment on his claim that the parties' jointly titled assets are his Separate Property. The jointly titled assets were acquired at least in part with Husband's salary, and as just explained in Division 2, there is at least a genuine issue of fact as to whether Husband's salary was marital property or his Separate Property. It follows that there also is at least a genuine issue of fact as to whether the jointly titled property acquired with his salary was marital property subject to equitable division. See Newman v. Patton, 286 Ga. 805, 806 (692 SE2d 322) (2010) (holding that property is marital and "subject to equitable division if it is acquired as a direct result of the labor and investments

10

of the parties during the marriage" (citation and punctuation omitted)).[4]

In any event, there is also a factual dispute about whether the joint titling was intended to create marital property. Paragraph 4 (b) (2) of the agreement reserved to both parties the "unqualified right" to dispose of their Separate Property in any manner that they chose, including "by joint ownership of property with right of survivorship, or otherwise," and Paragraph 15 of the agreement, entitled "Gifts," says that "[n]othing contained in this Agreement shall be construed to preclude either [party] from receiving and enjoying the benefit of any provisions the other shall voluntarily make, whether by gift . . . or otherwise, for her or him." See Shaw v. Shaw, 290 Ga. 354, 354 (720 SE2d 614) (2012) ("[S]eparate property [of one spouse] . . . may be converted into a marital asset by . . . transferring full, partial, or joint ownership in the property to [the other] spouse."); Coe v. Coe, 285 Ga. 863, 864 (684 SE2d 598) (2009) ("[A] spouse can make a gift of non-marital property to the marital unit, which transforms the separate property into marital property, subject to equitable

---

[4] Paragraph 4 (a) (3) of the agreement, under the heading "Marital Property Divided Equally," says that in the event of divorce, "except as otherwise provided herein, [the parties] shall divide equally all property acquired during the marriage regardless how the property is titled which is not the Separate Property of either party as defined herein."

11

division.").

Husband denied making any gifts to the marriage by jointly titling assets, but Wife submitted an affidavit stating that the parties "agreed . . . that all assets acquired during the marriage were for us to share as a couple" and to that end they "acquired many assets" that were "deliberately titled in both of our names," which she then managed. These competing affidavits create a factual dispute precluding summary judgment in Husband's favor on this issue. In addition, and even assuming arguendo that Husband's salary was his Separate Property, the joint titling of assets purchased with his salary qualifies as evidence of his intent to transform that Separate Property into marital property. See Shaw, 290 Ga. at 355. See also Grissom v. Grissom, 282 Ga. 267, 269 (647 SE2d 1) (2007) (holding that a husband's transfer of separate property to himself and his wife jointly manifested an intent to transform the separate property into marital property), disapproved on other grounds by Thompson v. Thompson, 288 Ga. 4 (700 SE2d 569) (2010); Lerch v. Lerch, 278 Ga. 885, 886, n. 3 (608 SE2d 223) (2005) (holding that a gift from a spouse to himself and the other spouse raises a presumption that the property qualifies as marital).

Husband contends that Paragraph 3 (f) of the prenuptial agreement

precludes any inference of donative intent from the joint titling of assets acquired during the marriage. Paragraph 3 (f) says:

> Record Keeping. Each party shall attempt in good faith to maintain her or his Separate Property separately from her or his other assets and to make a reasonable and good faith effort to maintain records so as to facilitate the determination of what constitutes the Separate Property of each party. In the event of a dispute as to whether property constitutes Separate Property, the party asserting that such property is not Separate Property shall have the burden of proof.

Husband relies on the second sentence of this paragraph, which does specify that Wife has the ultimate burden of proof to show that the jointly titled assets are marital and not Husband's separate property. Which party bears the burden of proof on an issue at trial, however, does not dictate whether a rebuttable legal presumption may be drawn from certain evidence, precluding summary judgment on the issue. See Lerch, 278 Ga. at 886, n. 3. Moreover, the first sentence of Paragraph 3 (f) obligates the parties to try in good faith to avoid commingling their Separate Property with marital property, which undercuts Husband's assertion that despite the joint titling, he intended the multiple assets in question to remain his Separate Property, and Wife's affidavit further adds to the factual dispute on this issue.

The question before us is not which party will prevail at trial on whether

13

the jointly titled assets are marital property or Husband's Separate Property, or even whether Wife is entitled to summary judgment on any issue. We decide only whether the trial court properly denied Husband's motion for partial summary judgment. See BAC Home Loans Servicing, L.P. v. Wedereit, 297 Ga. 313 (___ SE2d ___) (2015). Because the trial court properly denied Husband's motion, we affirm.

Judgment affirmed. Thompson, C. J., Hines, P. J., Benham, Hunstein, Blackwell, JJ., and Judge Anne Elizabeth Barnes concur. Melton, J., not participating.

Decided July 6, 2015.

Domestic relations. Forsyth Superior Court. Before Judge Smith.

Lawler Green Prinz, Nancy F. Lawler, Amy K. Sullivan; Schiff Hardin, Leah Ward Sears, Samuel D. Almon, Crystal L. Conway, for appellant.

Warner, Bates, McGough, McGinnis & Portnoy, Kathy L. Portnoy, Nancy I. Jordan, for appellee.