**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

May 10, 2024

# In the Court of Appeals of Georgia

A24A0236. GELIN v. WELCH.

MILLER, Presiding Judge.

This is the second appearance of this domestic relations case before our Court. See *Gelin v. Welch*, 368 Ga. App. 375 (890 SE2d 156) (2023). Following a bench trial, the trial court issued an order awarding the father custody of the parties' child, requiring the mother to pay child support, and holding the mother in contempt. The mother appeals, arguing that the trial court erred by basing its custody award on events occurring during the case, improperly determining the parties' income, and making rulings that exceeded the scope of its pre-trial order. Because the trial court improperly determined the father's monthly gross income, we must reverse such determination and remand for the court to determine his income using the applicable

statutory requirements. Otherwise, the mother's arguments lack merit, and we affirm the trial court's order.

"In reviewing a bench trial, we view the evidence in the light most favorable to the trial court's rulings, defer to the trial court's credibility judgments, and will not set aside the trial court's factual findings unless they are clearly erroneous." *Gibson v. Gibson*, 301 Ga. 622, 624 (801 SE2d 40) (2017). "But the trial court's application of the law to the facts is reviewed de novo." *Cousin v. Tubbs*, 353 Ga. App. 873, 875 (840 SE2d 85) (2020).

The evidence shows that Crystal L. Gelin ("the Mother") and David R. Welch ("the Father") are the parents of a 16-year-old girl ("the Child"). The Father is approximately 67 years old, and the Mother is approximately 39 years old. The parties have never been married.

In 2010, an Ohio court issued orders that legitimated the Father, awarded the parties joint custody of the Child, and required the Father to pay $296.89 in monthly child support. In 2016, the Mother commenced the instant case in Cherokee County Superior Court by filing a petition requesting that she be awarded primary custody and that the Father pay child support. The Father filed an answer and a counterclaim

requesting that he be awarded primary custody, that his child support obligation be terminated, and that "other issues pertaining to the [C]hild," including child support, be heard. The Father subsequently filed a motion requesting that the Mother be held in contempt of temporary orders that had been entered by the trial court.

A multi-day bench trial was held in late 2021 and early 2022. The evidence at the trial showed that the Father retired from his job as a financial adviser before the Child was born. The Father testified that his monthly gross income was $2,429.75, which consisted of dividends, capital gains, and required minimum distributions from an inherited retirement account, and that he also had over $1 million in assets. In 2020 and 2021, the Father transferred an average of $5,000 per month from investment accounts to his checking account in order to pay certain expenses for himself and the Child.

The Mother previously worked as a banker earning approximately $40,000 per year. However, the Mother testified that she had been unable to work since 2020 due to depression, anxiety, and post-traumatic stress disorder. At the time of the trial, the Mother was receiving a monthly Social Security disability payment of $1,444, which she claimed constituted her entire income. However, the Mother's monthly expenses

3

far exceeded this amount, and her father helped her pay her expenses. The Mother had recently struggled with alcohol and gambling addictions, and her addictions and mental health issues had negatively impacted the Child.

Statements from the Mother's bank account showed that from December 2019 to November 2021, she deposited an average of $8,605.29 per month but often spent nearly her entire balance, including significant expenses incurred in gambling trips to casinos. Some of the deposits consisted of unemployment insurance benefits, disability benefits, tax refunds, distributions from retirement accounts, and gambling winnings. However, many of the deposits consisted of unspecified ATM deposits and transfers from individual people. The Mother admitted at trial that she could not explain the source of many of the deposits.

The trial court issued a final order awarding the Father primary custody of the Child, requiring the Mother to pay monthly child support of $1,057, and holding the Mother in willful contempt of the trial court's orders. The Mother appealed, and this Court vacated the order and remanded with direction that the trial court make additional findings of fact regarding the material changes in circumstances warranting a change in custody. *Gelin*, supra, 368 Ga. App. at 375 . The trial court then issued a

revised final order that contained additional findings of fact and the same custody, child support, and contempt rulings.

Regarding the custody award, the trial court found that between the entry of the Ohio orders and the time of the trial, the following material changes in circumstances that adversely affected the Child's best interests had occurred. At the time of the Ohio orders, the Child was two years old and the Mother was in good health, was employed full-time, was a capable parent, had a close, appropriate, and loving relationship with the Child, could discuss parenting issues with the Father, and could facilitate a court-ordered parenting time schedule. Now, however, the Mother was not a capable parent, did not have a close, appropriate, or loving relationship with the Child, could not maintain full-time employment due to mental illness, had gambling and alcohol addictions, could not pay her bills or manage her finances without her father's assistance, had discussed inappropriate matters with the Child, could not maintain a financially and emotionally stable environment for the Child, could not assist the Child with her school work and academic challenges, could not facilitate a court-ordered parenting time schedule, and could not discuss parenting issues with the Father. Thus, the trial court concluded that whereas the Mother lacked the stability

to properly provide for herself or to parent the Child and had little familiarity with the Child's needs, the Father was better suited to address the Child's needs and was more stable financially.

Regarding the child support award, the trial court determined that the Father's monthly gross income was $2,429.75, finding that he was retired and used retirement accounts, dividends, trust inheritance, and personal savings to meet living expenses and support the Child. The court found that the Mother had willfully underreported her income and imputed her monthly gross income at $8,605. The court explained that despite the Mother's claim that she was unemployed and only receiving Social Security disability income, she deposited approximately $8,605.29 per month into her bank account between 2019 and 2021, and she was unable to explain these large sums of money. The court stated that the Mother's monthly expenses far exceeded her purported disability income, and noted her father's financial assistance and the evidence that she had paid her attorneys over $100,000, had spent nearly $30,000 on her gambling addiction, recently took the Child on an elaborate trip, and smoked a pack-and-a-half of cigarettes per day. The court further concluded that while the Mother claimed she could not work due to her disabilities, she failed to disclose her

purported disabilities during discovery or to the guardian ad litem ("GAL") despite numerous requests for such information, the GAL could not corroborate the Mother's claim due to the Mother's failure to complete the requisite releases, and the Mother presented no evidence at trial to support this claim.

1. On appeal, the Mother argues that a modification of child custody is only warranted when a material change in circumstances occurs between the entry of a prior custody award and the filing of a modification claim, and here the Father's evidence and the trial court's findings all related to changed circumstances occurring after the filing of the Father's modification claim.[1] Because a trial court faced with a request for a modification of custody is tasked with comparing the circumstances existing at the time of the prior custody award and when it rules on the request, this argument lacks merit.

> In Georgia, there is a well established two-part test which the trial court must employ before instituting a change of custody. The trial court must determine whether there has been a material change in circumstances affecting the welfare of the child since the last custody award. If so, the trial court then determines whether the child's best interests will be

---

[1] We have addressed the Mother's arguments in a different order than she has presented them on appeal.

served by a change in custody. In other words, the best interests of the child should be utilized in deciding the case once a change in condition has been established. While a "best interests of the child" standard applies to an initial determination of custody, it is applicable in a change of custody action only after there has been a showing of a change in condition materially affecting the child.

(Citations and punctuation omitted.) *Brazil v. Williams*, 359 Ga. App. 487, 488-489 (1) (859 SE2d 490) (2021). In light of this standard, the Father had the burden of showing a material change in circumstances affecting the welfare of the Child since the entry of the Ohio custody award. *Park-Poaps v. Poaps*, 351 Ga. App. 856, 862 (2) (883 SE2d 554) (2019). Contrary to the Mother's argument, however, the trial court was not limited to considering the circumstances as they existed when the Father filed his modification claim. Instead, the court was tasked with comparing the circumstances as they existed at the time of the prior award and when the court ruled on the modification claim.

This Court has explained that "an initial custodial award will not always control after *any* new and material change in circumstances that *affects* the child is considered." (Emphasis supplied; citation and emphasis omitted.) *Brazil*, supra, 359 Ga. App. at 489 (1) (a); see also OCGA § 19-9-3 (b) (providing in pertinent part that

"this subsection shall not limit or restrict the power of the judge to enter a judgment relating to the custody of a child in any new proceeding based upon a showing of a change in *any* material conditions or circumstances of a party or the child") (emphasis supplied). And OCGA § 19-9-3 (a) (2) provides in pertinent part that "[t]he judge may take into consideration all the circumstances of the case, including the improvement of the health of the party seeking a change in custody provisions, in determining to whom custody of the child should be awarded," and that the judge's duty "shall be to exercise discretion to look to and determine solely what *is* for the best interest of the child and what *will* best promote the child's welfare and happiness and to make his or her award accordingly." (Emphasis supplied.) The statute's use of the present tense supports the notion that the trial court should look to the child's situation at the time the court makes its custody ruling. Thus, the trial court here did not err by considering the circumstances that occurred after the Father filed his claim for a modification of custody. See *Viskup v. Viskup*, 291 Ga. 103, 104-105 (2) (727 SE2d 97) (2012) (evidence concerning the child's socialization and emotional maturation during a custody modification proceeding supported a modification in custody).

2. The Mother argues that when calculating child support, the trial court erred in determining each party's monthly gross income. We conclude that the court erred in determining the Father's income but did not err in determining the Mother's income.

"In Georgia, determining each parent's monthly gross income is the first step that a court must take in calculating child support under our child support guidelines." (Citation and punctuation omitted.) *Cousin*, supra, 353 Ga. App. at 880 (3) (a) (i); see OCGA § 19-6-15 (b) (1). These guidelines broadly define gross income as "all income from any source, . . . whether earned or unearned," including income from salaries, recurring income from pensions or retirement plans, interest income, dividend income, trust income, capital gains, disability benefits, unemployment insurance benefits, gifts, prizes, lottery winnings, and "[a]ssets which are used for the support of the family." OCGA § 19-6-15 (f) (1) (A). "Adherence to the statutory provisions is mandatory, and the trial court's failure to consider a proven source of parental income constitutes error." *In the Interest of T. D. et al.*, Case No. A24A0371 (Ga. Ct. App. Feb. 21, 2024), 2024 WL 699527 at *3 (2); see also *Evans v. Evans*, 285 Ga. 319 (676 SE2d 180) (2009). The trial court's factual findings in calculating child

support are reviewed under a clearly erroneous standard, while its legal conclusions are reviewed de novo. *Nelson v. McKenzie*, 364 Ga. App. 533, 534 (1) (875 SE2d 515) (2022).

(a) The Mother argues that in setting the Father's monthly gross income at $2,429.75, the trial court improperly omitted consideration of his assets used for the support of the family. We agree.

While the Father testified that his monthly income was $2,429.75 and consisted of dividends, capital gains, and distributions from an inherited retirement account, other evidence showed that he transferred additional and significant sums of money from his other investment accounts to his checking account in order to pay for expenses for himself and the Child. Notably, the trial court specifically found that in supporting the Child, the Father had used both the sources that accounted for his claimed monthly income *and* his personal savings. However, the court did not consider the Father's personal savings that had been "used for the support of the family" when determining his monthly gross income, contrary to the requirements of OCGA § 19-6-15 (f) (1) (a) (xxii).

We acknowledge that "income" is generally defined as "[t]he money or other form of payment that one *receives*," while an "asset" is generally defined as "[a]n item that is *owned* and has value." (Emphasis supplied.) Black's Law Dictionary (11th ed. 2019); see also *Steis v. Steis*, 297 Ga. 483, 487 (2) (775 SE2d 139) (2015) ("[I]ncome itself is not in normal parlance an asset or property."). However, OCGA § 19-6-15 (f) (1) (A) (xxii) plainly defines "income," for purposes of calculating child support, to include "[a]ssets which are used for the support of the family." "When we consider the meaning of a statute, we look first to the text of the statute, and if the text is clear and unambiguous, we look no further, attributing to the statute its plain meaning." (Citation and punctuation omitted.) *Hendry v. Hendry*, 292 Ga. 1, 2 (1) (734 SE2d 46) (2012). Considering a parent's pre-existing assets which are used for the support of the family as "income" for purposes of calculating child support is also in line with the State's declared policy of "affording to children of unmarried parents, to the extent possible, the same economic standard of living enjoyed by children living in intact families consisting of parents with similar financial *means*." (Emphasis supplied.) See OCGA § 19-6-15 (c) (1); see also OCGA § 19-6-15 (f) (4) (A) (allowing a court to consider a parent's "assets" when imputing "income"). This declared

12

policy and the plain language of OCGA § 19-6-15 (f) (1) (A)(xxii) indicate that the definition of "income" under the child support guidelines is not necessarily coextensive with the general definition of "income." If the legislature did not mean to include a parent's pre-existing assets which are used for the support of the family in the definition of "income" under OCGA § 19-6-15 (f) (1) (A), "it is the job of the legislature, not the courts, to rewrite or revise statutes." (Citation omitted.) *Catoosa County v. Rome News Media*, 349 Ga. App. 123, 133-134 (825 SE2d 507) (2019).

Accordingly, we must reverse the trial court's determination of the Father's monthly gross income and remand for the court to determine such income as provided in OCGA § 19-6-15 (f) (1) (A). See *Evans*, supra, 285 Ga. at 320; *In the Interest of T. D. et al.*, supra, 2024 WL 699527 at *3 (2); *Nelson*, supra, 364 Ga. App. at 535 (1).

(b) The Mother argues that the trial court improperly imputed her monthly gross income at $8,605 for two reasons. First, there was no evidence that she had the ability to consistently earn that amount through legitimate means, as she only has a high school diploma, she previously earned less than $40,000 per year, and the trial court found that she was unable to work and was financially unstable due to mental illness and addiction. Second, the evidence showed that most of the subject deposits

13

into her bank account were from unemployment insurance benefits, disability payments, tax refunds, and retirement account withdrawals, and such amounts cannot be considered ongoing income. We conclude that the trial court was authorized to impute the Mother's monthly gross income based on her spending patterns and her failure to produce reliable evidence of income.

> When establishing the amount of child support, if a parent fails to produce reliable evidence of income, such as tax returns for prior years, check stubs, or other information for determining current ability to pay child support or ability to pay child support in prior years, and the court . . . has no other reliable evidence of the parent's income or income potential, gross income for the current year may be imputed. When imputing income, the court . . . shall take into account the specific circumstances of the parent to the extent known, including such factors as the parent's assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, health, criminal record and other employment barriers, and record of seeking work, as well as the local job market, the availability of employers willing to hire the parent, prevailing earnings level in the local community, and other relevant background factors in the case.

OCGA § 19-6-15 (f) (4) (A).

In the period leading up to trial, the Mother deposited an average of $8,605.29 per month into her bank account. While the Mother provided evidence that some of

14

the deposits were legitimate and/or non-recurring, many of the deposits consisted of unspecified ATM deposits and transfers from individual people, and she admitted that she could not explain the source of many of the deposits. See *Cousin*, supra, 353 Ga. App. at 882 (3) (a) (i) ("[G]iven the substantial LLC and gambling income listed on [the Father's] 2015 and 2016 tax returns, the trial court was entitled to discount [his] credibility as to his more recent income," to find that his 2017 W-2 and DRFA provided incomplete information regarding his gross income in 2017, and to calculate his 2017 income based on his prior two years of income).

The evidence also showed that the Mother's expenses on both necessities and frivolities far exceeded her purported monthly income of $1,444, that her father helped pay her expenses, and that she failed to provide releases to the GAL necessary to corroborate her claim that she was unable to work. See *Brogdon v. Brogdon*, 290 Ga. 618, 619 (2) (723 SE2d 421) (2012) (trial court's finding that the husband had monthly gross income of $12,000 was supported by evidence that he frequently made large cash withdrawals, recently made large purchases, and used his business account to pay a substantial amount of his personal expenses averaging approximately $12,000 per month); *Dunn v. Dunn*, 368 Ga. App. 161, 167 (5) (889 SE2d 352) (2023) (trial court

was authorized to rely on evidence of the father's income established during a temporary hearing to calculate his child support obligation in a final order, because he failed to provide a recent paycheck from his new job despite being advised to do so). We cannot disturb the trial court's decision to credit this evidence over the Mother's testimony that her monthly income was only $1,444. See *Wood v. Wood*, 283 Ga. 8, 11 (4) (655 SE2d 611) (2008); *Dyals v. Dyals*, 281 Ga. 894, 895 (1) (644 SE2d 138) (2007).

3. Lastly, the Mother argues that the trial court erred by requiring her to pay child support and holding her in contempt because these two issues exceeded the scope of matters to be tried under the pre-trial order. This argument is contrary to the facts and the law.

The pre-trial order incorporated the Father's motion for contempt and indicated that this motion was pending for consideration. The pre-trial order also indicated that child support was a disputed issue and that the Father proposed that the Mother pay child support as provided in his child support worksheet. "A pretrial order is to be construed liberally to allow the consideration of all questions fairly within the ambit of contested issues." (Citation and punctuation omitted.) *Baumann*

*v. Snider*, 243 Ga. App. 526, 528 (1) (532 SE2d 468) (2000). Clearly, the pre-trial order allowed the consideration of the Father's requests that the Mother be held in contempt and be required to pay child support.

Further, the Mother raised no objection at the trial when the Father argued and presented evidence in support of his requests regarding contempt and child support. "Failure of a party to raise an issue in the pretrial order is not controlling where evidence is introduced on the issue without objection, the opposing party is not surprised, and the issue is litigated. Rather, the pretrial order is deemed modified to conform to the evidence that is admitted." (Citations omitted.) *Baumann*, supra, 243 Ga. App. at 528-529 (1); see also OCGA § 9-11-15 (b). Accordingly, the trial court's rulings on the Father's requests regarding contempt and child support did not exceed the scope of the pre-trial order.

For the foregoing reasons, we reverse the trial court's determination of the Father's monthly gross income and remand for the court to determine such income using the applicable statutory requirements. Otherwise, we affirm the court's revised final order.

*Judgment affirmed in part and reversed in part, and case remanded with direction.*

*Markle and Land, JJ., concur.*